OPINION
Defendant-appellant Michael Bengala appeals the decision of the Mahoning County Common Pleas Court, Juvenile Division, which enforced a foreign support order by directing him to pay $400 per month towards over $51,000 in child support arrearage owed to plaintiff-appellee Sharon Walton. For the foregoing reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE
In March 1995, Sharon Walton (appellee) registered a foreign support order in the juvenile court. This order, which obligated Mr. Bengala to pay $800 per month for each of the parties two children, originated out of a court in Missoula County, Montana in 1991. After the foreign support order was registered in an Ohio court, the parties could move for enforcement of the order or modification of current support. Thus, in May 1995, Bengala sought a decrease in his current support obligation and asked that an equitable monthly amount be ordered toward his own arrearage.
On September 21, 1995, a magistrate of the juvenile court decreased the current amount of child support to approximately $300 per child per month. The magistrate also ordered Bengala to pay a nominal amount of $20 per month towards the arrearage as he did not have sufficient income from which to pay a higher amount. The magistrate noted that the total amount of the arrearage was yet to be determined as accurate information was not yet rendered. The juvenile court adopted the magistrate's decision.
In early 1999, Walton filed a motion which sought an increase in child support and an increase in the monthly amount paid toward arrearage. The juvenile court held a hearing on these matters on December 3, 1999. At this hearing, the Child Support Enforcement Agency (CSEA) of Mahoning County represented Walton and asked that the court give full faith and credit to the Missoula County Court's child support order and the Missoula County CSEA's arrearage determination. Donna Mason, a case manager/support specialist for Mahoning County CSEA, testified that she gathered the information for computing the arrearage. She stated that she received certified copies of Bengala's payment history and arrearage from the Missoula County CSEA. She testified that Bengala's arrearage was certified at $53,368.96, but because he made some payments through the Mahoning County CSEA, his arrearage as of November 18, 1999, was $51,845.56. (Tr. 7).
The certified copies from the Missoula County CSEA and the foreign support order were later admitted into evidence over Bengala's objection. His attorney objected to the underlying judgment and its amount and stated that there may be justifications for attacking the amount of the child support which constituted the arrearage. (Tr. 17. 19, 24).[1] On December 14, 1999, the court released a judgment entry which found that Bengala's support arrearage totaled $51,845.56 and ordered him to pay $400 per month toward this arrearage. Bengala filed timely notice of appeal.
 ASSIGNMENT OF ERROR
Bengala's sole assignment of error provides:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DETERMINATION OF THE ORDER OF ARREARAGE IN THIS CAUSE."
The text under this assignment of error in Bengala's brief consists of a mere one page. Most of this text is a recitation of occurrences. The one discernible argument is that the witness who testified as to the arrearage had no personal knowledge of the arrearage itself or of the documents which were admitted to support her testimony as to the arrearage. In support of this argument, Bengala states, without further analysis, "Ohio Evidence Rule 901(B)(7) provides the specific requirements for admissibility of records, none of which were followed in the case at bar,".
Pursuant to Evid.R. 901(A), authentication or identification is a condition precedent to admissibility which is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims. As aforementioned, Bengala cites Evid.R. 901(B)(7), which states that public records or reports can be authenticated or identified by providing "[e]vidence that a writing is authorized by law to be recorded or filed and in fact recorded or filed in a public office, or purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept."
Regardless of Bengala's skeletal argument that the components of Evid.R. 901(B)(7) do not exist in this case, the introductory sentence of Evid.R. 901(B) specifically states, "By way of illustration only, and not by way of limitation, the following are examples of authentication or identification complying with the requirements of this rule * * *." Moreover, Evid.R. 901(B)(10) states that "evidence can be authenticated or identified by any method provided by statute or rule." Thus, even if Bengala correctly contends that Evid.R. 901(B)(7) is inapplicable, there are other methods of authentication.
Walton directs us to Evid.R. 902 which deals with self-authenticating documents. This rule states, "Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to * * * (4) Certified copies of public records * * *." Although the prior court entry ordering Bengala to pay $800 per month per child is a public record, whether an arrearage calculation is public is debatable.
Nevertheless, "Certified copies of public records" is merely the title of subsection (4). The text of Evid.R. 902(4) provides that a self-authenticating document is a certified "copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office." (Emphasis added). Because CSEA is required to record all payments to the agency from the obligor, it appears that the payment history of an obligor is "an official record or report or entry therein" which is self-authenticating when certified by an authorized person.
Alternatively, we return to Evid.R. 901(B)(10) and focus on authentication by a statutorily approved method. According to R.C. 3115.27, there are special rules of evidence and procedure applicable to cases involving registration and enforcement of foreign support orders. SeeCompton v. Compton (June 11, 1999), Greene App. No. 99CA17, unreported, 3 (pointing out that intent behind the special rules is to ease the proponent's burden when registering and enforcing the support order where the obligor resides).
As relevant to the case at bar, R.C. 3115.27(C) provides:
 "A copy of the record of child support payments certified as a true copy of the original by the custodian of the record may be forwarded to a responding tribunal. The copy is evidence of facts asserted in it, and is admissible to show whether payments were made."
Accordingly, it appears that the certified documents were admissible in this case and Bengala's argument is without merit.
Additionally, we note that Bengala's objection to the juvenile court was based upon different grounds than his argument on appeal. See fn. 1,supra. In order to allege error in admitting or excluding evidence, not only must a substantial right be affected but Bengala must have filed a timely objection which specifically stated the basis for that objection. Evid.R. 103 (A)(1). As such, when Bengala made a specific objection to the admission of evidence on one ground, he waived all other objections on appeal. Although the appellate court may recognize plain error, this doctrine is usually reserved for criminal cases. Evid.R. 103(D). In this case, there was no plain error regarding authentication.
In fact, Bengala's attorney specifically stated, "I will agree that Montana has sent a judgment up here showing an arrearage in excess of $51,000, a certified copy of it, and the Child Support Enforcement Agency has proceeded in the manner that Miss Mason testified." (Tr. 19). Thus,appellant's attorney conceded that the documents admitted wereauthenticated or identified, i.e., that the documents themselves were what CSEA claimed. See Evid.R. 901(A) (defining authentication) and (B) (noting that the examples of authentication listed are by way of illustration only and are not the exclusive methods of authenticating evidence). As such, Bengala's assignment of error is overruled.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
DONOFRIO, J. and WAITE, J., concurs.
[1] Under R.C. 3115.44(A), appellant could have attempted to establish certain defenses to enforcement of the foreign support order against him such as fraud or partial payment. Although the court stated at the hearing that appellant's objections concerning the arrearage should have been raised in Missoula County, it seems that the court was merely stating the general rule. See Section 1738(B)(a) and (e), Title 28, U.S. Code, The Full Faith and Credit for Child Support Orders Act. Because there was no proffer of evidence, we cannot determine if appellant's defense would have been one provided in R.C. 3115.44(A) or whether he was merely trying to argue something that had to be argued on appeal in Montana or in a modification motion in Missoula County. See Evid.R. 103(A)(2) (regarding proffers of excluded evidence). Regardless, the court later gave appellant the opportunity to present evidence to refute the amount of the arrearage, but appellant's attorney stated, "I have no evidence to offer at this time." (Tr. 22). Furthermore, appellant does not argue on appeal that the court precluded him from presenting evidence to contest the amount of the arrearage. Rather, appellant contests the sufficiency of the authentication of the evidence demonstrating the arrearage.